UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME L. ZEPEDA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>T. PETERSON, et. al,<br><br>　　　　Defendants. | ) Case No.: 1:12-cv-1085- LJO-JLT (PC)<br>)<br>) ORDER DISMISSING COMPLAINT WITH<br>) LEAVE TO AMEND<br>)<br>) ORDER DENYING REQUEST TO COMPEL<br>) FILING OF ADDITIONAL EXHIBITS<br>)<br>) (Doc. 1 and 12). |

　　　　Plaintiff is a prisoner proceeding pro se and in forma pauperis in an action pursuant to 42 U.S.C. § 1983.  On July 5, 2012, Plaintiff filed his Complaint against numerous defendants.  (Doc. 1). For the reasons set forth below, Plaintiff's Complaint is DISMISSED WITH LEAVE TO AMEND. Also before the Court is Plaintiff's motion to compel filing of additional exhibits.

**I.　Screening Requirement**

　　　　The Court is required to screen any complaint filed by a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity" in order to identify any "cognizable claim."  28 U.S.C. § 1915A(a)-(b).  The Court should dismiss the case if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or if the prisoner is "seek[ing] monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B).  A Court should dismiss a claim as frivolous only "when the facts alleged rise to the

1

level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them" and not simply because the Court may believe the "plaintiff's allegations unlikely." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). When determining whether a claim is malicious, the Court will analyze whether it was made in good faith. Kinney v. Plymouth Rock Squab Co., 236 U.S. 43, 46 (1915).

## II.  Pleading Requirements

The Federal Rules of Civil Procedure outline the general requirements of pleading a complaint. A complaint is required to have a "short and plain statement" that outlines the grounds for jurisdiction in that court as well as "showing that the pleader is entitled to relief; and a demand for the relief sought." Fed. R. Civ. P. 8(a). Pro se complaints are generally held to "less stringent standards" than complaints drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

A complaint must afford fair notice to the defendant as well as state the elements of the claim in a plain and succinct manner. Jones v. Cmty Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The complaint is supposed to give the defendant fair notice of the claims that are being brought against him/her as well as the grounds for bringing them. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted). Allegations that are conclusory and vague do not support a cause of action. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). The Supreme Court further clarified that,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation] The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.

Iqbal, 129 S.Ct. at 1949. A Court is required to assume as true in the light most favorable to the plaintiff, any well-pled factual allegations, when determining if the plaintiff is entitled to relief. Id. However, this tenet is "inapplicable to legal conclusions." Id. If a complaint fails to state a recognizable claim, the Court has the discretion to grant leave to amend the complaint in order to amend the deficiencies in the factual allegations. Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### III.  § 1983 Claims

Section 1983 of title 42 of the United States Code does not confer substantive rights; but instead provides "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994). Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In order to state a claim pursuant to § 1983, a plaintiff must allege facts that support that (1) he was deprived of a right afforded to him by federal law, and (2) the deprivation was committed by someone acting under color of state law. West v. Atkins, 487 U.S. 42, 48-49 (1988); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976). Additionally, a plaintiff is required to allege a specific injury suffered, as well as show a causal relationship between the defendant's conduct and the injury suffered by the plaintiff. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made"). Section 1983 does not recognize respondeat superior liability. Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978). Accordingly, a supervisor may not be held liable merely because a subordinate the plaintiff's constitutional. Id. "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

1  Lastly, similar to any other complaint, conclusory allegations that lack supporting facts are
2  insufficient to state a claim under § 1983. Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977).

3  **IV. Plaintiff's First Amended Complaint**

4  Plaintiff's Complaint, which lists thirteen claims against various defendants, consists of 57
5  pages of handwritten pleading and nearly 250 pages of attached exhibits. Plaintiff's printed
6  handwriting is very small and difficult to decipher. However, it appears Plaintiff's allegations can be
7  summed up as follows:

8  On December 16, 2008, the prison librarian noticed that several pages had been torn out of the
9  library's Annotated Codes, including four pages from the Penal Code, eight pages from the Penal
10 Code Supplement, four pages from the Welfare and Institutions Code, and six pages from the
11 Evidence Code. (Doc. 1-1 at 42). Based upon the library records, Plaintiff was the last person to use
12 the books.

13 Later that day two officers recovered several of the missing pages from Plaintiff in his cell.
14 (Doc. 1-1 at 42). The librarian determined that the books could not be repaired and that it would cost
15 $1142.98 to replace the damaged volumes. (Doc. 1-1 at 42).

16 Plaintiff was issued a Rules Violation Report for Destruction of State Property Greater than
17 $400. The hearing was held on May 7, 2009. (Doc. 1 at 13). During the hearing, Plaintiff admitted to
18 tearing out the pages. (Doc. 1-1 at 37). The hearing officer issued the following ruling: 150 days
19 credit forfeiture, 90 days loss of privileges, and 90 day loss of Friday visits. (Doc. 1-1 at 39).
20 Additionally, the hearing officer ordered that a hold be placed on Plaintiff's trust account until the full
21 cost of the damaged books had been recovered. (Doc. 1-1 at 42). Because Plaintiff never signed an
22 Inmate Withdrawal, the chrono hold requested by the hearing officer was never enforced. (Doc. 1 at
23 29).

24 On December 10, 2010, Defendant Peterson placed Inmate Trust Account withdrawal forms in
25 the library cells and had another officer inform all inmates that such forms needed to be signed in
26 advance and would be used if any library books were damaged. (Doc. 1 at 6-7). Plaintiff reluctantly
27 signed the form. (Doc. 1 at 32-33).
28

4

During this time, Plaintiff had been complaining about lack of access to the library and denial of his Preferred Legal User ("PLU") status. Plaintiff submitted numerous grievances on the issue. (Doc. 1 at 29). On December 10, 2010, Plaintiff tried to deliver another grievance to Peterson, but Peterson refused to accept it. Later than day, Plaintiff was informed by another officer that they would be placing a hold on Plaintiff's trust account for the books he damaged, but did not pay for, in 2008. (Doc. 1 at 29). Plaintiff later learned that Peterson submitted the Inmate Trust Account Withdrawal form he signed in the library, along with the prior hearing officer's order, to the Inmate Trust Account Office. (Doc. 1 at 65). Plaintiff states that the form was altered to include the $1142.98 previously owed. (Doc. 1 at 65). On December 13, 2010, the Trust Account Office listed the library obligation on Plaintiff's inmate statement report and began to withhold $55 per month. (Doc. 1-1 at 10).

Plaintiff's first seven claims stem from these events and the fact that he can no longer purchase items from the commissary because of the chrono hold for the library debt. The remaining six claims all relate to Plaintiff's belief that Peterson and other Defendants denied him access to courts when they denied him PLU status or did not provide him with adequate library time.

**V. Analysis**

### 1. Claim I - Deprivation of Property – Inmate Trust Account

In Claim I, Plaintiff alleges that Defendant Peterson improperly submitted a Trust Account Withdrawal Order to charge Plaintiff's inmate trust account $1142.98 to "pay for damage to [library] books." (Doc. 1 at 6-10, 65). Plaintiff's signature appears on the bottom of the form. However, Plaintiff contends that he signed the form "under duress of [being denied] access to the law library." Id. Plaintiff states that Peterson had no lawful authority to do such an act and that Peterson's act was done "without a reasonable process." (Doc. 1 at 8). Plaintiff contends that Peterson's actions therefore violated his "state created due process rights." (Doc. 1 at 6).

#### a. Private Right of Action – State Law Claims

The Due Process Clause of the Fourteenth Amendment protects individuals from state deprivations of life, liberty, or property without due process of law. With respect to a prisoner's property, the United States Supreme Court has held that "an unauthorized intentional deprivation of property" by a prison official constitutes a violation of due process if a meaningful post-deprivation

5

1  remedy for the loss is unavailable. Hudson v. Palmer, 468 U.S. 517, 533 (1984) (emphasis added). If,
2  however, a prison official merely acts negligently in losing a prisoner's property, there is no due
3  process violation. *See* Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is
4  simply not implicated by a negligent act of an official causing unintended loss of or injury to life,
5  liberty, or property.") (emphasis in the original). Since it is well established that an inmate has a
6  property interest in the funds in his inmate trust account, the court must decide what process the
7  inmate is due Vance v. Barrett, 345 F.3d 1083, 1089 n. 6 (9th Cir.2003); Quick v. Jones, 754 F.2d
8  1521, 1523 (9th Cir.1984).

9  Taking Plaintiff's allegations that Peterson intentionally deprived Plaintiff of his property as
10  true, Plaintiff's complaint still fails to state a cognizable claim. Under the Supreme Court's decision
11  in Hudson, Peterson's actions constitute a violation of due process only if a meaningful post-
12  deprivation remedy for Plaintiff's loss is unavailable. *See* Hudson, 468 U.S. at 533. Here, Plaintiff
13  has a meaningful post-deprivation remedy. Plaintiff may file a grievance with prison officials and, if
14  this fails to satisfy him, he may file a lawsuit in state court pursuant to California Government Code
15  §§ 900, et seq., which provides a remedy for torts committed by public employees. *See* Parratt v.
16  Taylor, 451 U.S. 527, 539 (1981) ("[P]ost-deprivation remedies made available by the State can
17  satisfy the Due Process Clause."); Arnold v. Williams, No. CIV S-08-28886 DAD P, 2009 WL
18  3710522, at *3 (E.D. Cal. Oct. 28, 2009) (California Government Code §§ 900, et seq. provide a
19  sufficient post-deprivation remedy for the purposes of due process).

20  Throughout Claim I, Plaintiff contends that Peterson is guilty of several crimes, under the
21  California Penal Code including "extortion," "seizing property without regular process," "forgery,"
22  and "embezzlement." Specifically, Plaintiff cites Penal code sections 146(b) (seizure without
23  authority), 518 (definition of extortion), 521 (describing extortion as a misdemeanor), 415(a)
24  (fighting), 115(a) (procuring forged documents), 522 (obtaining signature by threat), and 506 (persons
25  entrusted with others property), and California Code of Regulations, Title 15, sections 3120(c)(2)
26  (inmate library requests). However, a private right of action under a criminal statute has rarely been
27  implied. Chrysler Corp. v. Brown, 441 U.S. 281, 316, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). Where a
28  private right of action has been implied, "'there was at least a statutory basis for inferring that a civil

1 cause of action of some sort lay in favor of someone." Chrysler Corp., 441 U.S. at 316 (quoting Cort
2 v. Ash, 422 U.S. 66, 79, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). Here, none of the Penal Code sections
3 cited by Plaintiff mention any available private right of action.

4 Additionally, the existence of regulations, such as these, governing the conduct of prison
5 employees does not necessarily entitle Plaintiff to sue civilly to enforce the regulations or to sue for
6 damages based on the violation of the regulations. The Court has found no authority to support a
7 finding that there is an implied private right of action under Title 15 and Plaintiff has provided none.
8 Given that the statutory language does not support an inference that there is a private right of action,
9 the Court finds that Plaintiff fails to state any claims upon which relief may be granted based on the
10 violation of Title 15 regulations. Accordingly, Plaintiff's claims based on violations of the Penal Code
11 sections and/or Title 15 are **DISMISSED**.

### b. Compliance with California Tort Claims Act

13 Even if Plaintiff could proceed with the alleged statutory violations, Plaintiff would then need
14 to establish that he has complied with local regulations in order to successfully bring a state law claim
15 against these defendants. Tort claims against public entities and their employees are governed by the
16 California Tort Claims Act, which states "no suit for money or damages may be brought against a
17 public entity on a cause of action for which a claim is required to be presented . . . until a written claim
18 therefor has been presented to the public entity and has been acted upon . . . or has been deemed to
19 have been rejected." Cal. Gov't Code §§ 945.4, 945.6; Creighton v. City of Livingston, 628 F. Supp.
20 2d 1199, 1224-25 (E.D. Cal. 2009) (internal quotation marks and citations omitted). Under this Act,
21 tort claims against public entities or employees must be presented within six months of the accrual of
22 the cause of action. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-50.2. The purposes of this Act
23 are to:

> (1) give the governmental entity an opportunity to settle just claims before suit is brought, (2) permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim; and (3) avoid multiple suits arising out of the same transaction or occurrence and thus further the goal of judicial economy.

27 Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1173 (E.D. Cal. 2005) (internal quotation marks and
28 citations omitted).

"A plaintiff's supplemental state law claims against a California public agency are barred unless the plaintiff has complied with the requirements of the Tort Claims Act before commencing a civil action." Creighton, 628 F. Supp. 2d at 1224-25 (citing Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995)). Because Plaintiff has not established that he has complied with the California Tort Claims Act, all state law claims must be **DISMISSED**.

### 2. Claim II – Fourteenth Amendment - Violation of Due Process Rights

#### a. Defendant Randall

In Claim II, Plaintiff alleges that during the disciplinary hearing in 2009, Defendant Randall violated his right to due process by not allowing him to have a jury trial or in the alternative, "a civil procedure."[1] (Doc. 1 at 14). Plaintiff claims that Randall should have determined whether Plaintiff "waived" or "consented to less protections" pursuant to 15 C.C.R. §3120(c)(2). Plaintiff further alleges that Randall denied Plaintiff the opportunity to be "heard" and present evidence mitigating damages at his May 7, 2009 disciplinary hearing. (Doc. 1 at 13.) As a result, Plaintiff was found guilty of violating Directors Rule 3011 by the specific act of Destruction of State Property Greater than $400. (Doc. 1-1 at 38). This disposition resulted in Plaintiff being assessed 150-day credit forfeiture, loss of privileges for 90 days, and a 90-day loss of Friday visits. (Doc. 1-1 at 38).

Plaintiff's due process claim against Defendant Randall appears to be barred by Heck v. Humphrey, 512 U.S. 477 (1994) and its progeny. In Heck, the United States Supreme Court held that a suit for damages on a § 1983 claim concerning unconstitutional imprisonment cannot be maintained unless the plaintiff can prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. This rule, also known as the favorable termination rule, has been extended to prison disciplinary proceedings where good time credits have been forfeited. See Edwards v. Balisok, 520 U.S. 641, 644-48 (1997). Therefore, a prisoner's § 1983 action challenging a disciplinary hearing "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter

---

[1] Notably, Plaintiff does not have a right to a jury trial in a prison disciplinary matter.

8

the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

Here, as indicated above, Plaintiff challenges a disciplinary hearing that resulted in a forfeiture of credits, among other things. If Plaintiff is successful in proving this claim (that Defendant Randall unfairly deprived Plaintiff of the opportunity to provide evidence at the disciplinary hearing), his success would necessarily imply the invalidity of those lost credits and would therefore imply the invalidity of his confinement. Plaintiff, however, has not demonstrated that his credits have been restored or that his disciplinary conviction has been set aside or overturned. Accordingly, Plaintiff's due process claim against Defendant Randall appears to be barred by Heck.[2] *See* Cervantes v. Pratt, 224 Fed. Appx. 697, 700 (9th Cir. 2007) (the asserted procedural defect of excluding evidence at a disciplinary hearing necessarily implies the invalidity of the revocation of early release credits; the claim is therefore barred by Heck).[1]

### b.  Defendants Mayo, Negrete, Holland, Wright, and Grannis

Lastly, Plaintiff claims that Defendants Mayo, Negrete, Holland, Wright, and Grannis, provided him with an "inadequate appellate review." (Doc. 1 at 15). Specifically, Plaintiff alleges that Mayo did not interview him about his grievance regarding the disciplinary hearing. (Doc. 1 at 15). As to Defendants Negrete, Holland, Wright and Grannis, Plaintiff alleges that they each misinterpreted his appeal as challenging his guilt rather than the imposition of an "unlawful assessment." (Doc. 1 at 15).

Even taking Plaintiff's allegations as true, Plaintiff cannot state a claim against these defendants, as the inmate appeals process does not create any substantive rights. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). When a prison official denies, screens-out, or ignores an inmate's grievance, the prison official does not deprive the inmate of

---

[2] Plaintiff may challenge this disciplinary determination only via a petition for habeas corpus. Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

[1] Citation to this unpublished decision is appropriate pursuant to Ninth Circuit Rule 36-3(b).

any constitutional right. *See, e.g.*, Wright v. Shannon, No. CIV F-05-1485 LJO YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegation that prison officials denied or ignored his inmate appeals failed to state a cognizable claim); Walker v. Vazquez, No. CIV F-09-0931 YNP PC, 2009 WL 5088788, at *6-7 (E.D. Cal. Dec. 17, 2009) (plaintiff's allegation that prison officials failed to timely process his inmate appeals failed to state a cognizable claim); Towner v. Knowles, No. CIV S-08-2833 LKK EFB P, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegation that prison officials screened-out his inmate grievances without any basis failed to show a deprivation of federal rights). As a result, Plaintiff fails to state a claim against Defendants Mayo, Negrete, Holland, Wright, and Grannis for the handling of his inmate grievance.

### 3. Claim III – 18 U.S.C. § 1964(c) (RICO) and 18 U.S.C. § 1951(a) The Hobbs Act

In Claim III Plaintiff alleges a RICO violation by Defendant Peterson. (Doc. 1 at 16-20). Plaintiff's RICO allegation is confusing at best. It appears Plaintiff alleges Defendant Peterson forced Plaintiff to sign the Trust Account Withdrawal Order charging Plaintiff's inmate trust account $1142.98 to "pay for damage to [library] books" and forwarded the document along with the hold chrono to the Inmate Trust Account Office. (Doc. 1 at 18). Plaintiff claims that he has a property interest in his Trust Account funds and that such interest interfered with his ability to use the commissary services in the amount of $55 per month. (Doc. 1 at 19).

RICO allows a private citizen to sue to recover damages for injury by reason of a violation of section 1962, which prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity or through the collection of an unlawful debt. *See* 18 U.S.C. § 1962. To establish liability under RICO, the plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1086 (9th Cir. 2002). In addition, the plaintiff must show that the defendant caused an actual, concrete injury to the plaintiff's business or property. Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005); Chaset, 300 F.3d at 1086. In pleading a RICO violation, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face ... and [the facts] must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, --- U.S. ----, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

The RICO statute enumerates specific acts which satisfy the "racketeering activity" element, such as "an act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . ." 18 U.S.C. § 1961(1). In addition, to establish a pattern, Plaintiff must "show that the racketeering predicates are related [to each other] and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989).

Although Plaintiff correctly alleges that he has a property interest in the funds in his inmate trust account, the predicate acts alleged by Plaintiff cannot support a cognizable RICO claim. Within Claim III, Plaintiff alleges that Peterson committed "extortion under color of official right." (Doc. 1 at 18). In making such an allegation, Plaintiff seemingly makes reference to the Hobbs Act. The Hobbs Act makes it a crime to, *inter alia,* obstruct or affect commerce by extortion. 18 U.S.C. § 1951(a). The term "extortion" is defined as the obtaining of property from another with his consent induced by wrongful use of ... force, violence, or fear, or under color of official right. 18 U.S.C. § 1951(b).

Here, Plaintiff complains that Peterson had no right to the funds in Plaintiff's trust account and that he only signed the Trust Account Withdrawal Order "under duress of [being denied] access to the law library." (Doc. 1 at 6-10, 17 and 65). However, the Hobbs Act does not apply when the federal government is the intended beneficiary of allegedly extortionate acts by government employees. Wilkie v. Robbins, U.S.2007, 127 S.Ct. 2588, 551 U.S. 537, 168 L.Ed.2d 389, on remand 497 F.3d 1122. Given that the funds from Plaintiff's Trust Account went to the prison's library and not to Peterson personally, Plaintiff has failed to state facts to satisfy the "racketeering activity" element.

An alternative theory to proving a pattern of racketeering activity is to prove that the enterprise acquired or operated by means of an unlawful debt. Davis v. Ramen (E.D. Cal., Aug. 22, 2008, 1:06CV01216AWIDLBPC) 2008 WL 3970869. 18 U.S.C § 1961(6) defines an unlawful debt as follows:

> a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate

usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

In the present case, neither the debt owed to the library for the damaged books nor the funds in Plaintiff's trust account were the result of any type of gambling activity. Plaintiff therefore fails to sufficiently allege that Peterson operated by means of an unlawful debt as so defined in 18 U.S.C. § 1961(6).

Because Plaintiff fails to state a claim for relief that is plausible on its face or that raises a right to relief above a speculative level, Claim III against Peterson for violation of RICO must be **DISMISSED**.

### 4.  Claims IV and V -  Financial Privacy Rights

In Claims IV and V, Plaintiff seeks to hold Doe Defendant #1 liable for disclosing information about Plaintiff's Inmate Trust Account and seeks to hold Peterson liable for obtaining such information. (Doc. 1 at 22). Specifically, Plaintiff contends that Doe #1, as an employee of the Inmate Trust Account Office, had access to Plaintiff's private financial information and disclosed such information to Defendant Peterson without Plaintiff's consent. (Doc. 1 at 22). Plaintiff contends that Peterson then used that information about Plaintiff's account to "extort" Plaintiff into signing the withdrawal form and place the $1142.98 hold on Plaintiff's account. (Doc. 1 at 22). Plaintiff alleges that such actions by both Peterson and Doe #1 violate his rights under California Penal Code section 502 (unauthorized access to computers, computer systems and computer data) and 12 U.S.C. § 3401.

As explained in Part IV.A. above, Plaintiff cannot proceed with a state cause of action against Peterson, as Plaintiff has not stated facts to demonstrate compliance with the Tort Claim Act and a private right of action is rarely inferred from a criminal statute.

While Penal Code section 502(e) grants certain persons standing to bring a civil action for compensatory damages, Plaintiff is not one of those persons. *See* Cal. Pen. Code §502(e) (granting standing to the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss). Plaintiff contends that he has standing because the interest on the funds in the prisoner trust accounts are placed in the prisoner welfare account, "thus making him an owner." (Doc. 1 at 22). Contrary to Plaintiff's arguments, he cannot demonstrate

standing because he has not been harmed by Peterson's actions. Plaintiff was found guilty of the rules violation in 2009 and ordered to have a hold on his account until the cost of the damaged books was repaid.[3] The fact that such action did not occur until 2010 does not change the fact that he owed the money and was required to pay it back through his inmate trust account. Therefore, he does not have standing to challenge the withdrawal of funds that should have been taken from his account long ago.

### 5. Claim VI – Retaliation

Plaintiff alleges Peterson violated the First Amendment when Peterson altered the Inmate Withdrawl form and submitted to the Inmate Trust Account Office for processing. Plaintiff claims that Peterson took such action because Plaintiff had tried to deliver another grievance to Peterson earlier that day, but Peterson would not accept it. (Doc. 1 at 29).

Prisoners have rights under the First Amendment to pursue civil rights litigation and file prison grievances. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). The Ninth Circuit has stated,

> Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such as actions violate the Constitution quite apart from any underlying misconduct they are designed to shield.

Rhodes, 408 F.3d at 567. Therefore, allegations of retaliation against a prisoner's exercise of these First Amendment rights can support a claim under § 1983. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).

---

[3] The library rules regarding damaged materials specifically state the following:
Damaged material will be inspected by library staff to determine if the material remains unusable in its damaged state. A note will be placed in the body of the material noting observed damage, date, and the initials of the library staff making the damage determination. If the damage material requires repairs to continue to be usable, a non-refundable repair fee of five dollars will be charged to the inmate's trust account and a record of the repair will be maintained under the inmate's name**. If the damaged material is not repairable, the replacement cost will be charged to the inmate.** Payment of this fee does not allow the inmate to repossess the damaged item. Library staff will determine how to dispose of the damaged item and whether the damaged item will be repurchased for the collection. (emphasis added) (Doc. 1-1 at 6).

For a prisoner to properly state a claim for violation of his First Amendment rights, he is required to establish "five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68. The proper inquiry is whether the defendant's action is defined as one that "would chill or silence a person of ordinary firmness from future First Amendment activities." White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Here, Plaintiff alleges that Peterson purposefully and improperly submitted Plaintiff's signed Trust Account Withdrawal Order for $1142.98 because Plaintiff continued to submit grievances against Peterson for deprived of library time and PLU status. Plaintiff states that officer Grant (not a named Defendant) is the person who informed him that "since he wanted to file continuous grievances for staff to follow procedure he [Grant] would be placing a hold on Zepeda's trust account [for the damaged books from 2008]." (Doc. 1 at 29). However, Plaintiff believes the handwriting on the withdrawal form is Defendant Peterson's. Since Plaintiff has not stated facts to show that such action did not advance a legitimate correctional goal, it is recommended that Plaintiff claims of retaliation against Peterson be **DISMISSED**.

### 6. Claim VII – Fraud

Plaintiff complains that he reluctantly signed the Inmate Withdrawal form placed in his library cell. Officer Grant informed Plaintiff that the signed withdrawal was only going to be used if library books were damaged. (Doc. 1 at 32-33). Plaintiff claims that Peterson committed fraud when Peterson used Plaintiff's signed consent as a means to make Plaintiff pay for the book damage he was directed to pay in 2009. (Doc. 1 at 32-33). As explained above, Plaintiff has failed to allege compliance with the Tot Claims Act and therefore cannot state such a claim against Peterson.

### 7. Access to the Courts – Claims VIII - XIII

In Claims VIII through XIII, Plaintiff raises various situations in which Defendant Peterson or other unnamed defendants denied Plaintiff access to the courts.

14

All inmates have a constitutional right to access to the courts.  See Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009); Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1990).  However, this right is limited to challenging their criminal conviction via direct appeal, collaterally through a habeas corpus petition and to vindicate civil rights in actions brought under 42 U.S.C. § 1983.  Lewis, at 353, n. 3, 354-355.  This right is guaranteed only at the pleading stage and does not include the right to discover the cases or to litigate them effectively once they are file. Id. at 354-355.

Inmates do not have the right to a law library or legal assistance.  Lewis, 518 U.S. at 351. Law libraries and legal assistance programs are only the means of ensuring access to the courts. Id. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. Rather, an inmate claiming interference with or denial of access to the courts must show that he suffered an actual injury. Id.  An actual injury means "a specific instance in which an inmate was actually denied access to the courts." Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.1989).

In addition to demonstrating official acts frustrating the inmate's litigation, where a prisoner asserts a backward-looking denial of access claim must show the loss of a "nonfrivolous" or "arguable" underlying claim. *See* Christopher v. Harbury, 536 U.S. 403, 413-414 (2002).  The underlying claim must be set forth in the pleading claiming a denial of access to the courts "as if it were being independently pursued."  Id. at 417.  Finally, the plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought."  Id. at 415.

To establish the first element, the inmate must show he suffered an "actual injury."  Lewis, 518 U.S. at 348. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id.  The failure to demonstrate an actual injury is jurisdictional. Alvarez v. Hill, 518 F.3d 1152, 1155 (9th Cir. 2008) ("Failure to show that a "nonfrivolous legal claim had been frustrated" is fatal").

///

### 8. Claims VIII and IX

In this Claim, Plaintiff alleges that Defendant Peterson continually misplaced, hid, or lost his law library requests—even those handed directly to her. (Doc. 1 at 34-35). As a result, he claims he was only able to access the library about once a month--whereas a general legal user (GLU) is at least entitled to receive two hours per week. (Doc. 1 at 34). Plaintiff claims that he was prejudiced by Peterson's actions because he had "inadequate study time" and was forced "to prosecute his habeas petition on incomplete and outdated or irrelevant information" he received from other inmates, rather than from the sources in the library. (Doc. 1 at 37-38).

In Claim IX, Plaintiff alleges that Peterson improperly denied Plaintiff Preferred Legal User (PLU) status on October 11, 2009. (Doc. 1 at 41; Doc. 1-2 at 38). Plaintiff also seeks to impose liability on Defendants Holland, Grannis, Tfone, Carrasco, Gonzalez, Enriquez, Bonville, Steadman, and Haak for not granting his appeal of Peterson's decision. (Doc. 1 at 39 and 44). Plaintiff complains that if he would have been given "adequate, effective, and meaningful opportunity to do legal research, he would have been able to [sic] stave off dismissal." (Doc. 1 at 45).

It does not appear that Plaintiff was actually denied access to the court at any time under either claim or that the claim presented in the latter case was harmed in any way by denial of PLU status. Rather, Plaintiff's complaint is that he could have filed a more effective brief if he had received additional access. As explained in the authorities above, the right to access courts right does not include the right to discover the cases or to litigate them effectively once they are filed. Lewis, at 354-355. Moreover, Plaintiff's allegations that defendants Holland, Grannis, Tfone, Carrasco, Gonzalez, Enriquez, Bonville, Steadman, and Haak improperly denied his inmate complaints are insufficient to demonstrate a constitutional violation. In the Ninth Circuit, it is well-established that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Thus, Plaintiff has failed to state cognizable constitutional claim(s) against Defendants Peterson, Holland, Grannis, Tfone, Carrasco, Gonzalez, Enriquez, Bonville, Steadman, and Haak regarding his PLU status claim and insufficient library time.

///

### 9. Claims X and XI

In this claim, Plaintiff complains about being deprived of library time in 2000 and 2001 at Salinas Valley State Prison as a result of lockdowns. (Doc. 1 at 47-49). Plaintiff claims that his case would not have been dismissed if Doe defendants would have allowed him to access the library. However, Plaintiff notes that he filed a grievance about the issue and admits that his grievance was granted. (Doc. 1 at 49).

In Claim XI, Plaintiff complains that between 2000 and 2005, he was denied library time because the supervisors at his work assignment refused to provide him with a "hall pass" to leave work and visit the library and the librarian would not let him access the library without a pass from his work supervisor. (Doc. 1 at 50-51). Plaintiff contends that he was prosecuting his state and federal habeas petitions at the time and needed to research his issues. (Doc. 1 at 50).

Despite the fact that Plaintiff has a right to access the courts in certain cases, Plaintiff cannot litigate those issues eight or twelve years after the fact. Prisoners generally have four years from the time the claim accrues to file their action. *See* Wallace v. Kato, 549 U.S. 384, 387–88, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (applicable statute of limitations is California's statute of limitations for personal injury actions; Cal. Civ. Proc. Code § 335.1 (establishing a two-year statute of limitations in § 1983 cases); and California Civil Procedure Code § 352.1(a) (providing a tolling of the statute of limitations for two years for persons imprisoned on a criminal charge). Accordingly, Plaintiff's allegations in Claim X and XI are barred by the statute of limitations.

Other defects in the claims exist as well. Plaintiff does not link these allegations to any particular defendant. *See* Rizzo, 423 U.S. at 371-72, 377; Johnson, 588 F.2d at 743. Likewise, Claim X is unrelated to the circumstances and defendants primarily at issue in the bulk of this complaint in violation of Federal Rules of Procedure, Rule 18. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2). Normally, Plaintiff could pursue unrelated claims in a separate action. However, the Court advises Plaintiff that the decision to pursue a clearly barred matter may be deemed "frivolous."

As a result, Claims X and XI must be **DISMISSED**.

**10. Claims XII and XIII**

In these two claims, Plaintiff argues that his constitutional rights were violated when he did not receive his two hours per week for his GLU status. (Doc. 1 at 54-58). Plaintiff claims Defendants had a duty under California Code of Regulations Section 3123(b) to have his library requests honored and to receive PLU status when he has a pending court deadline. (Doc. 1 at 56). Plaintiff faults the Director of the Adult Rehabilitation Programs for not training his staff properly about such issues. (Doc. 1 at 56).

As set forth in the authorities above, "a supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Here, Plaintiff improperly seeks to impose liability upon the Director of the Adult Rehabilitation Programs without any allegation that the Director personally participated in any of the alleged acts. Furthermore, the California Code of Regulations does not create a private right of action. As a result, Plaintiff's Claims XII and XIII fail to state cognizable claims.

**VI. Leave to Amend**

The Court has spent an exception amount of time culling through Plaintiff's 200+ pages to try to figure out what, exactly, Plaintiff is claiming. For the reasons set forth above, the Court will order the complaint dismissed. The Court will grant Plaintiff **one final** opportunity to attempt to plead a cognizable claim. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotations omitted). However, Plaintiff is advised that, if he chooses to amend his complaint, he should carefully consider amending only those claims that can be cured by amendment and not include those claims that are clearly barred.

Plaintiff's **first amended complaint, including any exhibits attached thereto, SHALL NOT exceed 20 pages**. Plaintiff must provide a **short, plain statement** that gives the defendant fair notice of what the Plaintiff's claim is and the facts upon which his claim rests. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). This means that Plaintiff must **briefly** describe who the Defendant is, what the Defendant did, when the Defendant did

18

this and how the Defendant's actions violated Plaintiff's rights. Each Defendant is only liable for the injuries that his/her own actions cause so the complaint must set forth the actions of each defendant, assuming Plaintiff intends to sue more than one person. Plaintiff is advised that **he need not cite** legal authorities or attach exhibits to his complaint.

Plaintiff is cautioned that in his first amended complaint, he may not allege unrelated claims. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Moreover, Plaintiff is advised that once he files an amended complaint, his original pleadings are superceded and no longer serve any function in the case. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Thus, the first amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220. "All causes of action alleged in an original complaint which are not [re-]alleged in an amended complaint are waived." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted).

**ORDER**

Many of the complaints filed in the most complex cases brought in this Court do not exceed 15 pages. The idea that Plaintiff needs 200+ pages to do the same, is patently unacceptable. The Court has no doubt that Plaintiff can allege the "who, what, when, where and how" of his situation in less than 20 pages. Therefore, the Court **ORDERS**:

1. Plaintiff complaint is **DISMISSED** with 30 days leave to amend;

2. Plaintiff's first amended complaint, including any exhibits attached thereto, **SHALL NOT** exceed 20 pages.

3. Plaintiff's motion to compel filing of additional exhibits is DENIED.

**Plaintiff is advised that his failure to comply with the Court's orders SHALL result in a recommendation dismissing this case.**

IT IS SO ORDERED.

Dated:  **January 18, 2013**              **/s/ Jennifer L. Thurston**
                                          UNITED STATES MAGISTRATE JUDGE