UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME L. ZEPEDA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>T. PETERSON, et. al,<br><br>　　　　Defendants. | Case No.: 1:12-cv-1085- LJO-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS DISMISSING COMPLAINT WITHOUT LEAVE TO AMEND**<br>(Doc. 26)<br><br>**ORDER DENYING MOTION TO CONSOLIDATE CASES**<br>(Doc. 27) |

　　　　Plaintiff Jaime L. Zepeda is a prisoner proceeding *pro se* and *in forma pauperis* in an action pursuant to 42 U.S.C. § 1983.  Plaintiff filed his first amended complaint (Doc. 26) on June 24, 2013. (Doc. 26), which the Court presently screens pursuant to 42 U.S.C. § 1983.  For the reasons set forth below, the Court **FINDS** that Plaintiff fails to state a cognizable claim and **RECOMMENDS DISMISSAL** of the first amended complaint without leave to amend.

**I.　SCREENING REQUIREMENT**

　　　　As Plaintiff seeks redress from governmental employees in a civil action, the Court is required to screen his complaint in order to identify any cognizable claims. 28 U.S.C. § 1915A(a)-(b).  The Court shall "dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from

1

a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II. PLEADING STANDARDS

### A. Fed. R. Civ. P. 8(a)

Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 676-684 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (Id. at 678) (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." Id. at 679.

### B. 42 U.S.C. § 1983

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. See Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a

plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)). Finally, conclusory allegations that lack supporting facts are insufficient to state a claim under § 1983. Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977).

## IV. FACTUAL ALLEGATIONS

In presenting his lengthy and discursive first amended complaint, Plaintiff ignores the mandates of Fed. R. Civ. P. 8(a) and the Court's numerous orders. *See e.g.,* (Doc. 13). Plaintiff's 26-page first amended complaint[1] against 16 defendants contains minute and nearly indecipherable handwriting, (Doc. 26 at 1), which makes his cause of action difficult to ascertain. Nonetheless, the Court has reviewed the first amended complaint. To the best of the Court's ability to discern, Plaintiff's allegations are summarized as follows:[2]

On December 24, 2008, Plaintiff was charged with destruction of a law book. (Doc. 26 at 2, 4). On May 7, 2009, Lieutenant ("Lt.") Randall and Officer Peterson found Plaintiff guilty of the charge through a disciplinary hearing. Id. at 2. Plaintiff received: (1) 150-days good credit loss, (2) 90-days loss of privileges, (3) 90-days loss of Friday visits, and (4) referral to the institutional classification committee. Id. at 2-3. On June 2, 2009, Warden Steadman, Warden Carrasco affirmed the disciplinary action. Id. at 3. At some point, Plaintiff alleges that Lt. Randall generated an unauthorized "Trust Account Hold chrono" on Plaintiff's account. Id. at 3. Lt. Mayo falsely reported that he gave him a hearing review on July 24, 2009. Id. at 3. Plaintiff complains that he was overcharged for damages relating to the law book. Id.

On December 7, 2010, Plaintiff spoke with Officer Grant, who is not a defendant, to resolve a group appeal. (Doc. 26 at 6). He handed Officer Grant a 602 inmate appeal concerning Officer

---

[1] Plaintiff apparently believes himself beyond the reach of the Court's explicit orders, and again submits a first amended complaint that exceeds the page limitation explicitly set forth by the Court. The Court is inclined to again strike the first amended complaint for failure to comply with the Court's order. Nonetheless, because the Court finds that Plaintiff fails to set forth any cognizable claim, the Court recommends dismissal of the complaint based on the substantive allegations contained in Plaintiff's complaint.

[2] The Court declines to summarize Plaintiff's factual allegations that occurred between 2001 and 2007, as they are irrelevant to the present cause of action. These factual allegations, however, are addressed below.

1 Peterson's hold on Plaintiff's trust account. Id. at 7.  Sometime later that day, Officer Grant informed Plaintiff he would be placing a hold on Plaintiff's account because Plaintiff continuously filed complaints against prison personnel, but it appears that Officer Grant recanted his threat and he and Plaintiff "came to an agreement to start on a "clean slate." Id. at 7.

On December 10, 2010, Officer Peterson required Plaintiff to sign a CDCR Form 195 to authorize withdrawals from his trust account in the event state property was damaged. (Doc. 26 at 5). Plaintiff signed "under duress of denying access to [the] law library." Id. at 5.  Ultimately, the funds were not withdrawn from his account, but a hold was placed on his account and he was unable to use his trust account to purchase certain items. Id. at 6.

Plaintiff indicates that Officer Peterson sought to further retaliate against Plaintiff by gaining access to his personal financial information. (Doc. 26 at 8).  She further denied him PLU status. Id. at 8.  Plaintiff indicates that he was "unable to file a [p]etition for writ of certiorari to the U.S. Supreme Court of his habeas case." Id. at 8.

**V. ANALYSIS AND DISCUSSION**

    **A.**    <u>**Claims arising prior to July 1, 2008, are frivolous**</u>

The Court previously advised Plaintiff at length regarding a prisoner's statute of limitations with regard to his First Amendment claim of access to the Courts. *See* (Doc. 13 at 17).  Notably, the Court indicated that prisoners generally have four years from the time the claim accrues to file their action. *See* Wallace v. Kato, 549 U.S. 384, 387–88, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (applicable statute of limitations is California's statute of limitations for personal injury actions; Cal. Civ. Proc. Code § 335.1 (establishing a two-year statute of limitations in § 1983 cases); and California Civil Procedure Code § 352.1(a) (providing a tolling of the statute of limitations for two years for persons imprisoned on a criminal charge). Finally, the Court previously advised Plaintiff that "the decision to pursue a clearly barred matter may be deemed "frivolous"." (Doc. 13 at 17).

Nonetheless, Plaintiff ignores that Court's ruling and he again alleges that Defendant Doe #2 and Defendant Peterson collectively denied him access to the courts between 2000 early 2011. (Doc. 26 at 22). Plaintiff initiated this matter on July 5, 2012, (Doc. 1), which is the date that determines the timeliness of Plaintiff's claim.  Thus, the California tolling statute to the statute of limitations bars

consideration of any facts occurring prior to July 1, 2008. Therefore, the Court finds that Plaintiff's re-allegations of events occurring prior to July 1, 2008, are **frivolous**.

### B. Claim I – Fourteenth Amendment - Violation of Due Process Rights

#### 1. Defendant Randall

In Claim I, Plaintiff alleges that during the disciplinary hearing on May 7 2009, Defendant Randall violated his right to: "(i) hear and be heard to the actual damages in violation of CCR 15 3011, 3320(1)…(ii) to present evidence regarding actual damages when [Defendant Randall] represented [that] a liability phase was not necessary due to "irregularities," [and] (iii) deprived Zepeda of his property without any authority when he took it upon himself to generate a Trust Account Hold chrono." (Doc. 26 at 16). As a result, Defendant Randall found Plaintiff guilty of violating 15 Cal. Code Reg. § 3011 for the destruction of state property in excess of $400.00. Id. at 2. This disposition resulted in Plaintiff being assessed 150-day credit forfeiture, loss of privileges for 90 days, a 90-day loss of Friday visits, and referral to and Institutional Classification Committee for review. Id. at 3.

Plaintiff's due process claim against Defendant Randall appears to be barred by Heck v. Humphrey, 512 U.S. 477 (1994) and its progeny. In Heck, the United States Supreme Court held that a suit for damages on a § 1983 claim concerning unconstitutional imprisonment cannot be maintained unless the plaintiff can prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. This rule, also known as the favorable termination rule, has been extended to prison disciplinary proceedings where good time credits have been forfeited. See Edwards v. Balisok, 520 U.S. 641, 644-48 (1997). Therefore, a prisoner's § 1983 action challenging a disciplinary hearing "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

Here, as indicated above, Plaintiff challenges a disciplinary hearing that resulted in a forfeiture of credits, among other things. If Plaintiff is successful in proving this claim (that Defendant Randall

unfairly deprived Plaintiff of the opportunity to provide evidence at the disciplinary hearing), his success would necessarily imply the invalidity of those lost credits and would therefore imply the invalidity of his confinement. Plaintiff, however, has not demonstrated that his credits have been restored or that his disciplinary conviction has been set aside or overturned. Accordingly, Plaintiff's due process claim against Defendant Randall appears to be barred by Heck.[3] *See* Cervantes v. Pratt, 224 Fed. Appx. 697, 700 (9th Cir. 2007) (the asserted procedural defect of excluding evidence at a disciplinary hearing necessarily implies the invalidity of the revocation of early release credits; the claim is therefore barred by Heck).[4]

On the other hand, Plaintiff argues that setting aside the imposition of the disciplinary sanction would be proper because it would not disturb the finding of guilt, only the sentence imposed. (Doc. 26 at 16–17). Plaintiff argues that the CDCR's Operations Manual § 54100.20.2[5] permits a "disciplinary disposition or sanction improperly imposed to be rescinded (sic) that would not disturb the guilt findings." Id. at 17. However, Plaintiff's request that the Court set aside his disciplinary sentence is also barred by Heck. *See* Edwards v. Balisok, 520 U.S. 641, 648 (1997) ("We conclude, therefore, that respondent's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983."). Therefore, the Court recommends that Claim I against Defendant Randall be **DISMISSED.**

### 2. Defendants Mayo, Negrete, Holland, Wright, and Grannis

Lastly, Plaintiff claims that Defendants Mayo, Negrete, Holland, Wright, and Grannis violated his "expectation of a corrective process." (Doc. 26 at 15). Specifically, Plaintiff alleges that Mayo did not interview him about his grievance regarding the disciplinary hearing. Id. at 3. As to Defendants Negrete, Holland, Wright and Grannis, Plaintiff alleges that they "ignored the substance of his appeal." Id. at 4.

---

[3] Plaintiff may challenge this disciplinary determination only via a petition for habeas corpus. Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

[4] Citation to this unpublished decision is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[5] In the first amended complaint, Plaintiff avers that § 52080.20.2 permits the modification of an RVR sanction. A review of the CDCR's Operations Manual indicates that no such provision exists. However, § 54100.20.2 contains the language referenced by Plaintiff. Thus, the Court presumes that Plaintiff relies on § 54100.20.2.

Even taking Plaintiff's allegations as true, as previously advised, Plaintiff cannot state a claim against these defendants, as the inmate appeals process does not create any substantive rights. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). When a prison official denies, screens-out, or ignores an inmate's grievance, the prison official does not deprive the inmate of any constitutional right. *See, e.g*., Wright v. Shannon, No. CIV F-05-1485 LJO YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegation that prison officials denied or ignored his inmate appeals failed to state a cognizable claim); Walker v. Vazquez, No. CIV F-09-0931 YNP PC, 2009 WL 5088788, at *6-7 (E.D. Cal. Dec. 17, 2009) (plaintiff's allegation that prison officials failed to timely process his inmate appeals failed to state a cognizable claim); Towner v. Knowles, No. CIV S-08-2833 LKK EFB P, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegation that prison officials screened-out his inmate grievances without any basis failed to show a deprivation of federal rights).

Nonetheless, Plaintiff argues that he was not seeking a "perfect appeal," but rather seeks to impose supervisory liability on Defendants Mayo, Negrete, Holland, Wright, and Grannis. (Doc. 26 at 17) (*citing* al-Kidd v. Ashcroft, 580 F.3d 949, 964 (9th Cir. 2009) rev'd and remanded, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (U.S. 2011)). To that extent, Plaintiff is advised that liability may not be imposed on supervisory personnel under section 1983 on the theory of *respondeat superior,* as each defendant is only liable for his or her own misconduct. Id.; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989); *accord* Starr v. Baca, No. 09–55233, 2011 WL 477094 *4–5 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir.2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir.2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir.1997). Given that Plaintiff presents no cognizable claim against Defendant Randall, the Court finds that Plaintiff fails to state a claim against Defendants Mayo, Negrete, Holland, Wright, and Grannis. Therefore, the Court recommends that Claim I against Defendants Mayo, Negrete, Holland, Wright, and Grannis be **DISMISSED.**

*///*

### 3. Defendant Peterson

In Claim I, Plaintiff alleges that Defendant Peterson acted outside the scope of her employment by, among other things, "commit[ing] fraud to simulate a legal process in violation" of numerous California statutes. (Doc. 26 at 17). Namely, Defendant Peterson informed Plaintiff that he "had a trust withdrawal order in [his] cell…If you refuse [to sign] you will not receive law books." Id. at 5. Plaintiff signed the form by indicting that he signed "under duress of denying access to [the] law library. Id. Plaintiff further indicates that Defendant Peterson "deprived him of an impartial decision maker (sic) in violation of [California law]." Id. at 17.

As previously indicated, the Due Process Clause of the Fourteenth Amendment protects individuals from state deprivations of life, liberty, or property without due process of law. With respect to a prisoner's property, the United States Supreme Court has held that "an unauthorized intentional deprivation of property" by a prison official constitutes a violation of due process if a meaningful post-deprivation remedy for the loss is unavailable. Hudson v. Palmer, 468 U.S. 517, 533 (1984) (emphasis added). If, however, a prison official merely acts negligently in losing a prisoner's property, there is no due process violation. *See* Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.") (emphasis in the original). Since it is well established that an inmate has a property interest in the funds in his inmate trust account, the court must decide what process the inmate is due. Vance v. Barrett, 345 F.3d 1083, 1089 n. 6 (9th Cir.2003); Quick v. Jones, 754 F.2d 1521, 1523 (9th Cir.1984).

Plaintiff has a meaningful post-deprivation remedy. Plaintiff may file a grievance with prison officials and, if this fails to satisfy him, he may file a lawsuit in state court pursuant to California Government Code §§ 900, et seq., which provides a remedy for torts committed by public employees. *See* Parratt v. Taylor, 451 U.S. 527, 539 (1981) ("[P]ost-deprivation remedies made available by the State can satisfy the Due Process Clause."); Arnold v. Williams, No. CIV S-08-28886 DAD P, 2009 WL 3710522, at *3 (E.D. Cal. Oct. 28, 2009) (California Government Code §§ 900, et seq. provide a sufficient post-deprivation remedy for the purposes of due process).

Throughout Claim I, Plaintiff relies on the Rosenthal Fair Debt Collection Practices Act, Cal.

8

Civ. Code § 1788 *et seq.* to state his claim against Defendant Peterson. Specifically, Plaintiff alleges that Defendant Peterson engaged in "contractual deceit," "unlawful threats by a creditor," and "mimicked legal authority to collect a debt." (Doc. 26 at 17). However, Plaintiff's reliance on the statute is misplaced.

Generally, the statute prohibits a debt collection from collecting a consumer debt by the use of threats. The statute defines "consumer debt" as "money [or] property…which is due or owing or alleged to be due or owing from a natural person to another person." Cal. Civ. Code § 1788.2(f). Similarly, a "creditor" is defined as "a person who extends consumer credit to a debtor." Cal. Civ. Code § 1788.2(i). An individual may maintain a private right of action against a creditor under the statute. Cal. Civ. Code § 1788.30(b).

Plaintiff fails to present, and the Court cannot find, any legal authority on which to find that Defendant Peterson's actions constituted a collection of a consumer debt. Rather, it appears that Defendant Peterson sought to preserve law library property by ensuring that Plaintiff would agree to hold himself responsible for future destruction of property. Thus, the Rosenthal Fair Debt Collection Practices Act is inapplicable to Plaintiff's matter. Therefore, the Court recommends that Claim I as to Defendant Peterson be **DISMISSED.**

### 4. California Tort Claims Act

Even if Plaintiff could proceed with the alleged California statutory violations, Plaintiff would then need to establish that he has complied with local regulations in order to successfully bring a state law claim against these defendants. Tort claims against public entities and their employees are governed by the California Tort Claims Act, which states "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected." Cal. Gov't Code §§ 945.4, 945.6; <u>Creighton v. City of Livingston</u>, 628 F. Supp. 2d 1199, 1224-25 (E.D. Cal. 2009) (internal quotation marks and citations omitted). Under this Act, tort claims against public entities or employees must be presented within six months of the accrual of the cause of action. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-50.2. The purposes of this Act are to:

>(1) give the governmental entity an opportunity to settle just claims before suit is brought, (2) permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim; and (3) avoid multiple suits arising out of the same transaction or occurrence and thus further the goal of judicial economy.

Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1173 (E.D. Cal. 2005) (internal quotation marks and citations omitted). "A plaintiff's supplemental state law claims against a California public agency are barred unless the plaintiff has complied with the requirements of the Tort Claims Act before commencing a civil action." Creighton, 628 F. Supp. 2d at 1224-25 (citing Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995)).

Plaintiff avers that he is excused from the presentment requirement "because this court has jurisdiction by both federal constitutional and statutory law." (Doc. 26 at 23). He further indicates that he raised his claims through the grievance process and as "allowed by California Government Code Section 935 *et seq.*" Id.[6] As Plaintiff fails to provide any factual support to demonstrate his compliance with the California Tort Claims Act, the Court finds that he fails to state any state claim. Thus, the Court recommends all of Plaintiff's state law claims be **DISMISSED**.

### C. Claim II – Right to Financial Privacy

In Claim II, Plaintiff seeks to hold Defendant Doe #1 liable for disclosing information about Plaintiff's Inmate Trust Account and seeks to hold Peterson liable for obtaining such information. (Doc. 26 at 17-19). Specifically, Plaintiff contends that Doe #1, as an employee of the Inmate Trust Account Office, had access to Plaintiff's private financial information and disclosed such information to Defendant Peterson without Plaintiff's consent. Id. at 18. Plaintiff contends that Peterson then used that information to freeze his account. Id. at 19. Plaintiff alleges that such actions by Peterson and Doe #1 violate his rights under California Penal Code section 502 (unauthorized access to computers, computer systems and computer data) and 12 U.S.C. § 3401 *et seq*.

As explained in above and in the Court's prior Order, Plaintiff cannot proceed with a state

---

[6] California Civil Code § 935 excuses parties in actions substantially similar to Civil Code § 1375 – actions for damages against common interest development builders, developers or general contractors – "from performing the substantially similar requirements under Section 1375 if the Civil Code." Seemingly, Plaintiff argues by analogy that because he filed a grievance, he is relieved of his obligation to comply with the CTCA. However, of course, Civil Code § 935 does not apply to government actors and there is no authority for the proposition that compliance with the grievance procedure satisfies the claims-filing procedures of the CTCA. Thus, § 935 is irrelevant to the Court's analysis.

cause of action against Peterson or Defendant Doe #1 first, because Plaintiff has not stated facts to demonstrate compliance with the Tort Claim Act. Second, a private right of action is rarely inferred from a criminal statute. Though Penal Code section 502(e) grants certain persons standing to bring a civil action for compensatory damages, Plaintiff is not one of those persons. *See* Cal. Pen. Code §502(e) (granting standing to the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss). Plaintiff contends that he has standing because is the owner of "data" contained in the computer system and he is a "beneficial owner." (Doc. 26 at 18).

On the other hand, 12 U.S.C. § 3401 *et seq.*, imposes civil liability on "agencies or departments of the United States" for disclosing certain financial records. 12 U.S.C.A. § 3417(a). However, the statute does not prohibit the enforcement of a disciplinary sanction. *See generally,* 12 U.S.C.A. § 3401 *et seq.*

Contrary to Plaintiff's arguments, he lacks standing because he has not been harmed by Defendant Doe #1's or Defendant Peterson's actions. Plaintiff was found guilty of the rules violation in May 7, 2009 and a hold was ordered placed on his account until the cost of the damaged books was recovered.[7] The fact that such action did not occur until 2010 does not change the fact that he owed the money and was required to pay it back through his inmate trust account. Therefore, he does not have standing to challenge the withdrawal of funds that should have been taken from his account long ago. Thus, the Court recommends that Claim II be **DISMISSED.**

///

///

---

[7] The Court previously noted that the library rules regarding damaged materials specifically state the following:

> Damaged material will be inspected by library staff to determine if the material remains unusable in its damaged state. A note will be placed in the body of the material noting observed damage, date, and the initials of the library staff making the damage determination. If the damage material requires repairs to continue to be usable, a non-refundable repair fee of five dollars will be charged to the inmate's trust account and a record of the repair will be maintained under the inmate's name**. If the damaged material is not repairable, the replacement cost will be charged to the inmate.** Payment of this fee does not allow the inmate to repossess the damaged item. Library staff will determine how to dispose of the damaged item and whether the damaged item will be repurchashed for the collection. (emphasis added) (Doc. 1-1 at 6).

**D. Claim III – 18 U.S.C. § 1964(c) (RICO) and 18 U.S.C. § 1951(a) The Hobbs Act[8]**

In Claim III, Plaintiff presents a convoluted RICO claim against Defendants Randall and Peterson. (Doc. 26 at 19-21). RICO allows a private citizen to sue to recover damages for injury by reason of a violation of section 1962, which prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity or through the collection of an unlawful debt. *See* 18 U.S.C. § 1962. To establish liability under RICO, the plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1086 (9th Cir. 2002). In addition, the plaintiff must show that the defendant caused an actual, concrete injury to the plaintiff's business or property. Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005); Chaset, 300 F.3d at 1086. In pleading a RICO violation, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face ... and [the facts] must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1974 (2007).

The RICO statute enumerates specific acts which satisfy the "racketeering activity" element, such as "an act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . ." 18 U.S.C. § 1961(1). In addition, to establish a pattern, Plaintiff must "show that the racketeering predicates are related [to each other] and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989).

Although Plaintiff correctly alleges that he has a property interest in the funds in his inmate trust account, the predicate acts alleged by Plaintiff cannot support a cognizable RICO claim. Plaintiff alleges that Defendant Peterson solicited Officer Grant to obtain Plaintiff's signature to access his Trust Account, when the government had no lawful claim to his Trust Account. Id. at 20. Plaintiff

---

[8] Plaintiff also raises claims concerning the "usurious rate" that the law library charged to his Trust Account Hold Chrono in violation of Cal. Civ. Code § 1788.16. As the Court previously addressed Plaintiff's Rosenthal Fair Debt Collection Practices Act claim, it need not reiterate its finding here. Similarly, the Court notes that this claim is barred by Plaintiff's failure to comply with the CTCA.

12

alleges that Defendant Peterson committed robbery and extortion against Plaintiff's free will.[9] Id.

In making such an allegation, Plaintiff seemingly makes reference to the Hobbs Act. The Hobbs Act makes it a crime to, *inter alia,* obstruct or affect commerce by extortion. 18 U.S.C. § 1951(a). The term "extortion" is defined as the obtaining of property from another with his consent induced by wrongful use of ... force, violence, or fear, or under color of official right. 18 U.S.C. § 1951(b).

Here, Plaintiff complains that Peterson had no right to the funds in Plaintiff's trust account and that he only signed the Trust Account Withdrawal Order "under duress of [being denied] access to the law library." (Doc. 26 at 5). However, the Hobbs Act does not apply when the government is the intended beneficiary of allegedly extortionate acts by government employees. *See* Wilkie v. Robbins, 551 U.S. 537, 563-67 (2007), on remand 497 F.3d 1122. Given that the funds from Plaintiff's Trust Account went to the prison's library and not to Peterson personally, Plaintiff has failed to state facts to satisfy the "racketeering activity" element.

An alternative theory to proving a pattern of racketeering activity is to prove that the enterprise acquired or operated by means of an unlawful debt. Davis v. Ramen (E.D. Cal., Aug. 22, 2008, 1:06CV01216AWIDLBPC) 2008 WL 3970869. Section 1961(6) and Title 18 of the United States Code defines an unlawful debt as follows:

> a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

In the present case, neither the debt owed to the library for the damaged books nor the funds in Plaintiff's trust account were the result of any type of gambling activity. Plaintiff therefore fails to sufficiently allege that Peterson operated by means of an unlawful debt as so defined in 18 U.S.C. § 1961(6).

Because Plaintiff again fails to state a claim for relief that is plausible on its face or that raises

---

[9] Exactly how, taking steps to recover the amount owed by Plaintiff for destroying law library books could possibly constitute a racketeering activity, is completely lost on the Court.

a right to relief above a speculative level, the Court finds that Plaintiff fails to state a claim. Therefore, the Court recommends that Claim III be **DISMISSED**.

### E. Claim IV – Retaliation

Prisoners have rights under the First Amendment to pursue civil rights litigation and file prison grievances. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). The Ninth Circuit has stated,

> Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such as actions violate the Constitution quite apart from any underlying misconduct they are designed to shield.

Rhodes, 408 F.3d at 567. Therefore, allegations of retaliation against a prisoner's exercise of these First Amendment rights can support a claim under § 1983. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).

For a prisoner to properly state a claim for violation of his First Amendment rights, he is required to establish "five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68. The proper inquiry is whether the defendant's action is defined as one that "would chill or silence a person of ordinary firmness from future First Amendment activities." White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Plaintiff alleges that Peterson retaliated against him when he attempted to file his inmate grievances. (Doc. 26 at 21). Specifically, Plaintiff alleges that Officer Grant told Plaintiff the "since [Plaintiff] wanted to file continuous grievances for staff to follow procedures he would be placing a hold on [Plaintiff's] trust account." Id. at 7. While Plaintiff avers that he and Officer Grant came to "an agreement to start on a clean slate," he concludes that Defendant Peterson subsequently frustrated Plaintiff's law library access and denied his "Priority Legal User" status. Id. at 8. Nowhere, however,

1  does Plaintiff provide factual support for his conclusion that Defendant Peterson took this action in
2  retaliation for Plaintiff exercising his First Amendment right.

3  Plaintiff argues that Peterson's action in freezing his trust account was "pretextual." (Doc. 26
4  at 21). However, Plaintiff's allegations that Defendant Peterson's freezing of his account was a
5  pretext for a retaliatory purpose is contradicted by the facts. What is clear, however, is that Plaintiff
6  owed money to the CDCR for the destruction of the law library property from the 2008 incident. The
7  freezing of his trust account was clearly a means to enforce the fine from the 2008 disciplinary action.
8  Thus, taking all of the allegations as true, Defendant Peterson's actions advanced a penological goal.
9  Therefore, the Court recommended that Claim IV be **DISMISSED**.

10  **F. Claim V – Access to the Courts**

11  In Claim V, Plaintiff presents a claim against Defendant Doe #2, Defendant Peterson, M.
12  Carrasco, M. Gonzalez, D. Trone, P. Enriquez, N. Grannis, R. Boniville, T. Haak, T. Steadman, K.
13  Holland, C. Holland and D. Foster.[10] All inmates have a constitutional right to access to the courts.
14  See Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009);
15  Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1990). However, this right is limited to challenging their
16  criminal conviction via direct appeal, collaterally through a habeas corpus petition and to vindicate
17  civil rights in actions brought under 42 U.S.C. § 1983. Lewis, at 353, n. 3, 354-355. This right is
18  guaranteed only at the pleading stage and does not include the right to discover the cases or to litigate
19  them effectively once they are file. Id. at 354-355.

20  Inmates do not have the right to a law library or legal assistance. Lewis, 518 U.S. at 351. Law
21  libraries and legal assistance programs are only the means of ensuring access to the courts. Id.
22  Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an
23  inmate cannot establish relevant actual injury by establishing that his prison's law library or legal
24  assistance program is subpar in some theoretical sense." Id. Rather, an inmate claiming interference
25  with or denial of access to the courts must show that he suffered an actual injury. Id. An actual injury
26  means "a specific instance in which an inmate was actually denied access to the courts." Sands v.

---

28  [10] Plaintiff's claims against Defendant Doe #2 arose between 2000 and 2005. As noted above, such claims are barred by the statute of limitations. Thus, the Court recommends that Claim V as to Defendants Doe #2 be **DISMISSED.**

1   Lewis, 886 F.2d 1166, 1171 (9th Cir.1989).

2       In addition to demonstrating official acts frustrating the inmate's litigation, where a prisoner asserts a backward-looking denial of access claim must show the loss of a "nonfrivolous" or "arguable" underlying claim. See Christopher v. Harbury, 536 U.S. 403, 413-414 (2002). The underlying claim must be set forth in the pleading claiming a denial of access to the courts "as if it were being independently pursued." Id. at 417. Finally, the plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id. at 415.

    To establish the first element, the inmate must show he suffered an "actual injury." Lewis, 518 U.S. at 348. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id. The failure to demonstrate an actual injury is jurisdictional. Alvarez v. Hill, 518 F.3d 1152, 1155 (9th Cir. 2008) ("Failure to show that a "nonfrivolous legal claim had been frustrated" is fatal").

**1. Defendant Peterson**

    Plaintiff fails to demonstrate that he sustained any actual injury. Plaintiff alleges that Defendant Peterson canceled Plaintiff's library appointments and denied his PLU requests in 2010. (Doc. 26 at 8). However, the sheer volume of filings submitted by Plaintiff from 2007 until 2011 belies any claim that Plaintiff was denied meaningful access to the courts. See Zepeda v. Sullivan, Case No. 08-17498, (9th Cir. 2009); Zepeda v. Tate, Case No. 1:07-cv-982-SMM, (E.D. Cal., May 20, 2011); Zepeda v. Sullivan, Case No. 1:06-cv-01391-LJO-GSA, (E.D. Cal., March 14, 2012). Nevertheless, Plaintiff claims Peterson's actions somehow prevented him from filing a "Petition for writ of certiorari to the U.S. Supreme Court of his habeas case." (Doc. 26 at 8). A review of Plaintiff's sole habeas matter filed prior to 2010, indicates that the Ninth Circuit denied Plaintiff's appeal on September 28, 2009. Zepeda v. Sullivan, Case No. 3:03-cv-05668-PJH, Doc. 58 (N.D. Cal. 2009). His petition to the United States Supreme Court would have been due no later than 90 days after this date which would have been before the end of 2009. U.S. Sup. Ct. R. 13 ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of

Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court **within 90 days** after entry of the judgment."), emphasis added. Thus, there is no showing that a denial of law library access in 2010 impacted Plaintiff's ability to file this petition for writ. Therefore, Plaintiff fails to state a claim of denial of access to the Court and the Court recommends that the claim as to Defendant Peterson be **DISMISSED**.

### 2. Defendants Carrasco, Gonzalez, Trone, Enriquez, Grannis, Boniville, Haak, Steadman, K. Holland, C. Holland, Foster, and Doe # 3

Plaintiff complains that Defendants M. Carrasco. M. Gonzalez, D. Trone, P. Enriquez, N. Grannis, R. Boniville, T. Haak, T. Steadman, K. Holland, C. Holland, and D. Foster "had the authority to act" yet permitted Plaintiff to fall victim to Peterson's alleged First Amendment violations. (Doc. 26 at 23). Similarly, Plaintiff alleges that Defendant Doe #3 failed to supervise and train staff to respect Plaintiff's First Amendment rights. Id.

Plaintiff's allegation that Defendants Holland, Grannis, Tfone, Carrasco, Gonzalez, Enriquez, Bonville, Steadman, and Haak improperly denied his inmate complaints are insufficient to demonstrate a constitutional violation. As noted above, it is well-established that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Furthermore, it does not appear that Plaintiff was actually denied access to the court at any time, thus, Plaintiff fails to state a claim against these Defendants.

Similarly, liability may not be imposed on supervisory personnel under section 1983 on the theory of *respondeat superior,* as each defendant is only liable for his or her own misconduct. Id.; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). As there is no underlying constitutional violation, Plaintiff fails to state a cognizable claim against Defendant Doe #3 for his or her failure to supervise. Therefore, the Court recommends that Claim V be **DISMISSED** in its entirety.

## VI. FUTILITY OF AMENDMENT

The Court has spent an exceptional amount of time culling through Plaintiff's 26-page first amended complaint. The Court finds that Plaintiff's first amended complaint is merely a condensed

version of his original complaint without any real, substantive effort to address the deficiencies previously noted by the Court. Despite the Court's prior lengthy order advising Plaintiff of the legal standards required to state a cognizable claim, Plaintiff again fails to do so. The Court, therefore, finds that permitting Plaintiff to again amend his complaint would be futile.

V.  **MOTION FOR ADMINISTRATIVE RELIEF**

On August 5, 2013, Plaintiff submitted a "Notice of Related Matter and Motion for Administrative Relief." (Doc. 27). The Court deems the present motion as a "Fed.R.Civ.P. 42(a) Motion to Consolidate."

Fed.R.Civ.P. 42(a) permits the Court to combine separate matters where the matters involving common questions of law or fact. Plaintiff requests that the Court consolidate this matter with his habeas corpus matter – Zepeda v. The United States of America, Case No. 1:13-cv-01086 – also pending before this Court because they arise from a common nucleus of operative fact. Id. at 4. Specifically, Plaintiff avers that Defendants' action in the present matter caused the dismissal of his prior habeas corpus matter. Id.

However, notably, the matters do not share common defendants and by definition, a habeas action *cannot* challenge the conditions of his confinement, the Court does not find that consolidating the action would serve any of the purposes that are intended to be furthered by consolidation. Fed. R. Civ. P. 42. To the contrary, consolidation would not ease the impact on judicial resources, it would not mitigate against delay—indeed, it would likely increase the delay that would otherwise be met in a typical habeas action—and it would raise the great potential for confusion. In addition, the procedures allowable in the habeas proceeding are much different. For example, a habeas matter does not proceed to trial and discovery is not routinely permitted. Bracy v. Gramley, 520 U.S. 899, 117 S.Ct. 1793, 1796–97 (1997); Harris v. Nelson, 394 U.S. 286, 295 (1969). Instead, modern habeas corpus procedure has the same function as an ordinary appeal. Anderson v. Butler, 886 F.2d 111, 113 (5th Cir.1989); O'Neal v. McAnnich, 513 U.S. 440, 442 (1995) (federal court's function in habeas corpus proceedings is to "review errors in state criminal trials" (emphasis omitted)). Likewise, the rules of civil procedure do not apply in habeas matters. Thus, the matters are not amenable to consolidation.

On the other hand, the Court recommends dismissal of the present matter without leave to

amend. Thus, the Court's Findings and Recommendations moots Plaintiff's Motion to Consolidate. Therefore, the Court the Fed.R.Civ.P. 42(a) Motion to Consolidate is **DENIED as moot**.

## ORDER

Based upon the foregoing, the motion to consolidate this matter with Plaintiff's habeas petition (Doc. 27) is **DENIED**.

## FINDINGS AND RECOMMENDATIONS

Accordingly, the Court **HEREBY RECOMMENDS** as follows:

1. That the fourth amended complaint (Doc. 26) be **DISMISSED without leave to amend;**

2. That Plaintiff's Fed.R.Civ.P. 42(a) Motion to Consolidate be **DENIED as moot.**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **14 days after being served with these findings and recommendations**, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. **The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order**. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 19, 2013**                              /s/ Jennifer L. Thurston
                                                     UNITED STATES MAGISTRATE JUDGE